# Whether Canteen Service Provided Through the Veterans' Canteen Service Is Exempt From Review Under the Federal Activities Inventory Reform Act of 1998

Canteen service provided through the Veterans' Canteen Service is not exempt from review under the Federal Activities Inventory Reform Act of 1998.

January 31, 2003

MEMORANDUM OPINION FOR THE DEPUTY DIRECTOR FOR MANAGEMENT
OFFICE OF MANAGEMENT AND BUDGET

You have asked for our opinion whether canteen service provided through the Veterans' Canteen Service ("VCS") is exempt from review under the Federal Activities Inventory Reform Act of 1998, Pub. L. No. 105-270, 112 Stat. 2382 ("FAIR Act"). As interpreted by the Office of Management and Budget ("OMB"), the FAIR Act requires each Executive Branch agency to determine whether non-governmental functions currently performed for the agency by the government could be performed more cost-effectively in the private sector. The Department of Veterans Affairs ("VA") believes that VCS canteen service is exempt from this cost-comparison process. *See* Letter for Jay S. Bybee, Assistant Attorney General, Office of Legal Counsel, from Tim S. McClain, General Counsel, Department of Veterans Affairs, *Re: Veterans' Canteen Service and the FAIR Act* (Dec. 11, 2002) ("VA Letter"). We have considered VA's arguments and conclude that VCS canteen service is not exempt.

## I.

In 1946, Congress established the VCS "as an independent unit in the [VA]," 38 U.S.C. § 7808 (2000), "for the primary purpose of making available to veterans of the Armed Forces who are hospitalized or domiciled in hospitals and homes of the [VA], at reasonable prices, articles of merchandise and services essential to their comfort and well-being," *id*. § 7801 (2000); *see also id*. § 7803 (2000) ("canteens at hospitals and homes of the [VA] shall be primarily for the use and benefit of veterans hospitalized or domiciled at such hospitals and homes"). In particular, the VCS statute provides that the VA Secretary shall "establish, maintain, and operate canteens where deemed necessary and practicable at hospitals and homes of the [VA] and at other [VA] establishments where similar essential facilities are not reasonably available from outside commercial sources." *Id*. § 7802(1) (2000). It vests the Secretary with additional authority needed to carry out this function. *See id*. § 7802(2)–(11).

The FAIR Act was enacted in 1998 "[t]o provide a process for identifying the functions of the Federal Government that are not inherently governmental functions." 112 Stat. at 2382. The FAIR Act generally defines the term "inherently governmental function" as "a function that is so intimately related to the public interest as to require performance by Federal Government employees," FAIR Act, § 5(2)(A), and it states that that term "does not normally include . . . any function that is primarily ministerial and internal in nature (such as . . . . operation of cafeterias)," *id*. § 5(2)(C)(ii). Section 2(a) of the FAIR Act provides that each fiscal year "the head of each executive agency shall submit to [OMB] a list of activities performed by Federal Government sources for the executive agency that, in the judgment of the head of the executive agency, are not inherently governmental functions." Section 2(d), entitled "Competition Required," states in part:

> Each time that the head of the executive agency considers contracting with a private sector source for the performance of [a listed] activity, the head of the executive agency shall use a competitive process to select the source (except as may otherwise be provided in a law other than this Act, an Executive order, regulations, or any executive branch circular setting forth requirements or guidance that is issued by competent executive authority).

Section 2(d) also directs OMB to "issue guidance for the administration of this" process.

Pursuant to section 2(d)'s directive, OMB revised Circular A-76 ("A-76") and its Supplement to A-76. A-76 implements the FAIR Act by mandating that "the Government shall not start or carry on any activity to provide a commercial product or service if the product or service can be procured more economically from a commercial source." A-76, ¶ 5(c). This general prohibition does not apply under the conditions specified in paragraph 8 of A-76—where, for example, "no commercial source is capable of providing the needed product or service"; "Government performance of a commercial activity is required for national defense reasons" or "would be in the best interests of direct patient care" at hospitals operated by the Government; or where studies show that "the Government is operating or can operate the activity on an ongoing basis at an estimated lower cost than a qualified commercial source." *Id*. ¶ 8. It also does not apply "when contrary to law, Executive Orders, or any treaty or international agreement." *See id*. ¶ 7(c)(1). A-76 defines a "commercial activity" as "one which is operated by a Federal executive agency, . . . which provides a product or service that could be obtained from a commercial source," and which does not "meet the definition of an inherently Governmental function." *Id*. ¶ 6(a). In terms virtually identical to the FAIR Act, it defines an "inherently Governmental function" as "a function which is so intimately related to the public interest as to mandate performance by Government employees." *Id*. ¶ 6(e).

## II.

VA argues that VCS canteen service is exempt from the requirements of the FAIR Act, as implemented by A-76. VA does not assert that canteen service is an inherently governmental function or that it meets any of the conditions specified in paragraph 8 of A-76. Instead, VA maintains that application of the FAIR Act "would be inconsistent with the plain language, as well as the legislative history, of the VCS statute." VA Letter at 1. That is, VA essentially claims that canteen service is exempt from the competitive process of A-76 because subjecting canteen service to that process would violate the VCS statute and thus be "contrary to law" under paragraph 7(c)(1) of A-76.[1]

We therefore address whether the competitive process provided by A-76 conflicts with the VCS statute. The VCS statute provides that the VA Secretary shall "establish, maintain, and operate canteens *where deemed necessary and practicable* at hospitals and homes of the [VA] and at other [VA] establishments *where similar essential facilities are not reasonably available from outside commercial sources.*" 38 U.S.C. § 7802(1) (emphasis added). VA argues, with considerable force, that the second italicized "where" clause modifies only "other [VA] establishments," not "hospitals and homes of the [VA]." But even if we were to read the second "where" clause in this way, the first "where" clause—"where deemed necessary and practicable"—plainly qualifies the Secretary's obligation to operate canteens at VA hospitals and homes. We believe that the question whether VCS canteen service at VA hospitals and homes is "necessary and practicable," far from precluding consideration of competitive alternatives, is plainly broad enough to permit such consideration.

VA apparently reads this same provision to mean that VA must *itself* establish and operate canteens at VA hospitals and homes where the Secretary deems them to be necessary and practicable, "regardless of the reasonable availability of similar facilities in the private sector." VA Letter at 4. Under this view, VA would be required to run a canteen itself, even if contracting out would be dramatically less expensive. Indeed, if, in a given hospital, the Secretary were to deem a canteen to be necessary but prohibitively costly (and hence not practicable), VA could neither establish a canteen itself nor permit a cost-effective private party to do so. In short, veterans in such a hospital would be deprived entirely of canteen services. Thus, VA's view would produce absurd results that would undermine the stated purpose of the VCS statute. *See* 38 U.S.C. § 7801 (stating that the "primary

---

[1] We note that the FAIR Act might be read to require cost comparisons *only* when an agency head "considers contracting with a private sector source for the performance of [a listed] activity." FAIR Act § 2(d). On that reading, the agency head, by never *considering* such private sector contracting, could avoid triggering any obligation on the part of his agency to engage in cost comparisons. OMB, however, in the exercise of its authority to implement the FAIR Act, has rejected this interpretation, *see* A-76, ¶ 9(e) (requiring consideration "of *all* existing in-house commercial activities") (emphasis added), and VA does not dispute this point.

purpose [of the VCS statute is to] mak[e] available to veterans of the Armed Forces who are hospitalized or domiciled in hospitals and homes of the Department, at reasonable prices" certain essential merchandise).

VA also argues that canteens should not be considered as individual units, because "[s]eparating canteens in this fashion would dilute the operational control contemplated in the VCS law," and interfere with the cross-subsidization that enables certain canteens to survive. VA Letter at 6. We are unable to locate any textual support in the VCS statute for the notion that all canteens should be considered as a single unit. Indeed, the pivotal language of section 7802(1), requiring the Secretary to establish canteens "where deemed necessary and practicable," appears to contemplate a location-by-location decision process.[2] We further note that although some legislative history may suggest that Congress intended the VCS to be financially self-sustaining, *see, e.g.*, S. Rep. No. 79-1701, at 4 (1946), the VCS statute explicitly authorizes appropriations needed to run VCS, *see* 38 U.S.C. § 7804 (2000), and requires VCS to submit estimates of any funds it may need "to restore any impairment of the revolving fund resulting from operations of the current fiscal year," *id.* § 7806 (2000). Although the VCS statute does contemplate financial interdependence among individual VCS canteens, nothing in the statute supports VA's conclusion that this interdependence precludes contracting out to the private sector where appropriate.

### III.

We conclude that VCS canteen service is not exempt from the FAIR Act's competitive process.

M. EDWARD WHELAN III
*Principal Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[2] Nor does the legislative history on which VA relies run counter to this conclusion. To say that the VCS "as a whole is to function as a unit," VA Letter at 4 (quoting S. Rep. No. 79-1701, at 5 (1946)), is not to say that every canteen operated in a VA facility is part of that unit.